Heriberto Leopoldo Hess Klinger et al., Plaintiffs and Appelles, v. Heirs of Juan Mestres Bagués, Defendants, and Luis Alberto Mestres, Intervener and Appellant.

No. 7938.    Argued December 19, 1939.—Decided January 8, 1940.

Mr. Justice De Jesús delivered the opinion of the Court.

The question involved in this appeal does not affect the defendants against whom the plaintiffs have a final judgment. This is an incident between plaintiffs and the intervener when the former tried to execute their judgment on a property mortgaged to the latter. Leaving aside those details which are not necessary for a decision of this appeal, the facts of the case may be summarized as follows: the plaintiffs were the owners of three rural properties mortgaged to Roses & Co. As they were the owners of another rural property on which there were no liens, the plaintiffs grouped the four properties and so grouped sold them to two persons each of

whom purchased a half in common of the same. The pur-chasers owed a balance of $650 of the purchase price and although they executed a mortgage in favor of the vendor on the whole grouped property acquired by them, when the contract of sale was recorded, the record of the mortgage was not requested and therefore, the registrar, in making the record of the sale, expressly mentioned the mortgage for $650 executed as guarantee for the balance of the purchase price.

One of the purchasers mortgaged his tenancy in common in favor of the intervener for an amount of $1,200, in principal, interest, etc., and this mortgage was recorded in the registry of property. Under this state of affairs, the mortgage in favor of Roses & Co. was foreclosed and due to this, the defendants lost said three properties, and in regard to these properties the mention of a mortgage in favor of the plaintiffs vendors was canceled as well as that executed and recorded in favor of the intervener. Later, the plaintiffs filed this suit against the successors in interest of the purchasers for the collection of $650 balance of the purchase price, and they obtained a judgment on default which became final when no appeal was taken from it. Once the judgment was final, the plaintiffs tried to attach the remaining property, that is, the one which was not subject to the mortgage of Roses & Co., but in trying to foreclose, they were confronted by the mortgage which the intervener had recorded on the same property. The lower court held that the intervener should be notified of the auction sale and although he appeared and alleged that he had a better title than the plaintiffs, his claims were rejected and finally the property was sold in execution of the judgment and the mortgage of the intervener in the registry of property was ordered canceled. It was against this decision that the intervener filed this appeal.

The fact that the express mention of title or of any other real right is effective against third parties in due

course since the date of presentation of the respective title, according to the provisions of Section 29 of the Mortgage Law, appears to have confused not only the plaintiffs-appellees but the lower court as well, thereby preventing a correct decision of the controversy.

The mention of the mortgage which was made in favor of the plaintiffs constituted a warning to all the world of the existence of a mortgage right *in potentia,* we could say, a right which could be consummated as soon as the mortgage was recorded in the registry of property.

Once the mortgage object of the mention is recorded in the registry of property, its legal effect is effective from the date of the presentation of the title on which the mention was based, since if this were not so, it could not be properly said that a mention is effective against third parties in due course. The necessity of recording the right object of the mention appears in Section 1774 of the Civil Code (1930 ed.) and in paragraph 2 of Section 146 of the Mortgage Law, both of which state that in order that a mortgage be validly constituted, it must be recorded in the registry of property and, in any case, this also appears from the second paragraph of Section 29 of the Mortgage Law which states: (Italics ours.)

*"The provisions of the foregoing paragraph shall be understood without prejudice to the obligation of specially recording such interests,* or to the liability which may be incurred by a person who must request the record in certain cases."

Morell, in his work entitled *"Legislación Hipotecaria de Ultramar"*, commenting on said Section, says:

"Although the simple mention would affect third parties in due course, *if he* (this refers to the owner of the above mentioned right) *wishes to make good his right before the courts, he has to register specifically said right, since he has to show a title registered in his favor."* (Parenthesis and italics supplied.)

In the case at bar, the plaintiffs did not record their mortgage before filing the complaint for the collection of the balance of the purchase money, Therefore, their action was

not one for the foreclosure of a mortgage, since as the right was not recorded, the mortgage had no existence as yet. But even assuming that the mortgage had been previously recorded, even so, the action that they filed was a personal suit for the collection of money since the action was not against the property, the complaint not praying for the sale of the mortgaged property, a circumstances which characterizes the ordinary action for the foreclosure of a mortgage. Apart from the fact that until the mortgage of the plaintiffs is recorded, the interveners' recorded mortgage continues being a first mortgage, as this is not a case for the foreclosure of a mortgage—whether through the summary proceedings of the Mortgage Law or by the ordinary proceedings under the Code of Civil Procedure—Section 125 of the Mortgage Law, as amended in 1912 (Laws, p. 65) and Sections 171 and 172 of the Regulations which authorize the cancellation of the rights of second mortgagees and junior mortgage lien holders if after notifying them of the sale at auction of the mortgaged property it is sold or adjudicated "in payment to the *first creditor,* in such manner that the value of what is sold does not equal or exceed the mortgage debt which is liquidated', are not applicable.

The case of *Montes de Oca* v. *Báez et al.,* 23 P.R.R. 656, on which the lower court based its judgment, is not applicable to the present case. In that case it was decided that Section 125 of the Mortgage Law and Sections 171 and 172 of the Regulations are applicable to an action for the collection of a mortgage credit through the special proceedings of the Mortgage Law as well as when a creditor elects the ordinary procedure of the Code of Civil Procedure. In both proceedings a mortgage foreclosure is involved while in the suit filed by the plaintiffs in this case the action brought is a personal one for the collection of money and therefore the said legal provisions are not applicable.

The case of *Mora* v. *Registrar,* 32 P.R.R. 731, cited by the appellees, far from favoring them is adverse to them

and illustrates perfectly the principles which we have stated in this opinion. In that case José Mora sold a rural property to Luis Perocier on July 3, 1920 for $6,500, of which he paid the amount of $500 and in the same deed of sale executed a mortgage to guarantee the deferred amount of the purchase price. The deed was presented in the registry of property and the registrar recorded it on August 5, 1922 in favor of the purchaser and as the independent record of the mortgage was not requested, the registrar limited himself, according to law, to recording the title and mentioning the mortgage for the unpaid balance of the purchase price. Perocier mortgaged the same property to Successors of Esmoris & Co., to guarantee $5,000 and that mortgage was recorded on August 5, 1922. Later, on the 18th of the same month, the mortgage mentioned in the record of the sale in favor of Perocier since the 5th of said month was recorded in favor of Mora. As Perocier did not pay the deferred price, Mora collected by foreclosing the mortgage by the summary foreclosure proceeding and notified Sucesores de Esmoris & Co. of the auction. The property was sold on January 7, 1924, and adjudicated to Mora himself for $2,000. At the latter's request, the District Court of Mayagüez ordered the cancelation of the mortgage of Sucesores de Esmoris & Cía., which was denied by the Registrar of Mayagüez because he mistakenly understood that as the mortgage of Sucesores de Esmoris & Cía. had been recorded before that of Mora, the legal provisions cited above were not applicable because the foreclosure was of a mortgage which was subsequent to that of Esmoris. This Court in reversing the ruling appealed from said:

"The registrar maintains that the mortgage should not be canceled for the reason that although the mortgage of Esmoris was created junior to the mortgage of Mora, the fact is that it was recorded before Mora's mortgage was recorded separately and, therefore, it cannot be considered as a junior mortgage that should be canceled in accordance with the provisions of said Article 125 of the Mortgage Law." (Page 733.)

"After the mortgage was recorded separately, there being no doubt about its date because it was a public document, and the mortgage having been mentioned beforehand in the registry, the conclusion reached by the district court that the mortgage of Esmoris was posterior and could and should be canceled was justified by the facts and the law."

As the case does not deal with the foreclosure of a mortgage through the foreclosure proceeding established either in the Mortgage Law or in the Code of Civil Procedure, Sections 125, 171 and 172 cited above are not applicable and therefore, the court exceeded its jurisdiction and erred in applying them to the present case.

For the foregoing reasons, the decision appealed from must be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Hutchison took no part in the decision of this case.